## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

LINDA MARIE WRIGHT,     )
                 )
       Plaintiff,     )
                 )
    v.             )     C. A. No. 15-1040-RGA/MPT
                 )
CAROLYN W. COLVIN     )
Acting Commissioner of     )
Social Security,     )
                 )
       Defendant.     )

## REPORT AND RECOMENDATION

### I.    INTRODUCTION

This action arises from the denial of plaintiff's claim for Social Security benefits. On December 8, 2011, plaintiff filed a Title II application for Social Security Disability Insurance Benefits ("DIB").  Plaintiff's prior application filed on March 7, 2006 was denied by the state agency on August 10, 2006.[1]  Plaintiff did not appeal this denial.[2] Under the doctrine of res judicata, the state agency's determination became final and binding.  Therefore, the current claim begins on August 11, 2006 until December 31, 2007, the date plaintiff's insurance status expired.

In her application and disability report, plaintiff alleged disability as of February 2, 2005 due to degenerative disc disease in her back and neck, nerve damage in her neck, left leg weakness, and cancerous tumors of the bladder.[3]  Her claim was initially

---

[1] D.1. 7, at 18.
[2] *Id.*
[3] D.I. 7, Ex.1 A at 63.

denied on March 27, 2012, and upon reconsideration on October 9, 2012.[4]  Following

these denials, plaintiff requested a hearing before the Administrative Law Judge ("ALJ")

and the video hearing occurred on May 27, 2014.[5]  At the hearing, testimony was

provided by plaintiff and an impartial vocational expert, Linda Augins.[6]  On August 2,

2014, the ALJ, Tom Duann, issued a written decision denying her claims.[7]  Plaintiff

requested a review of the ALJ's decision by the Social Security Appeals Council, which

was denied on September 25, 2015.[8]  Having exhausted her administrative remedies,

plaintiff filed this civil action seeking judicial review of the ALJ's final decision.

## II.    BACKGROUND

Plaintiff was born on February 3, 1958.  Her alleged disability claim under review

begins on August 11, 2006 through December 31, 2007, the date she was last insured.

Since plaintiff did not appeal the prior determination denying benefits, review of this

application begins, under the doctrine of res judicata, after the prior denial.

Plaintiff's highest level of education is the eleventh grade.  Since 2008, she has

worked as a manager of a mobile home park.  Her job responsibilities consist of

collecting rent from park tenants, performing inspections of homes and insuring

residents are performing maintenance upon their properties.  She performs these duties

with the assistance of her husband.  To qualify for disability benefits, plaintiff must

demonstrate she was disabled within the meaning of §§216(i), 223(d) and 1614(a)(3)(A)

---

[4] D.I. 7,  at 18.
[5] *Id.*
[6] *Id.*
[7] *Id.* at 15.
[8] D.I. 7, at 1.

of the Act.

A.   **Evidence Presented**

   **1. Musculoskeletal Impairments**

Plaintiff's medical history began in October 2004 when she saw her primary care physician, Dr. Badillo, complaining of burning neck and lower back pain.  After subsequent follow-up appointments, she was referred to Dynamic Physical Therapy in May 2005.[10]  The therapeutic treatment included stretching/flexibility activities, resistive activities, including machines, and free weights.[11] Thereafter, due to persistent pain, plaintiff visited the emergency room.[12]

On June 17, 2005, plaintiff was seen by Dr. Witherill of Interventional Spine Consultation upon referral by Dr. Badillo.[13]  Plaintiff complained of a one month history of lower back pain in both sides of her lumbar spine into the left buttock and on the left side of her knee.[14]  Pain was aggravated with sitting, standing, walking and bending; however, the pain subsided with rest, ice and pain medication. [15]

After several months of treatments, on January 9, 2006, plaintiff consulted a neurosurgeon, Dr. Yalamanchili, who diagnosed a herniated lumbar disc, lumbar spondylosis with myelopathy, lumbar degenerative disc disease and lumbar radiculopathy.[16]  These diagnoses were based on a November 2005 MRI evidencing a

---

[10] D.I. 7, Ex.3 F at 213.
[11] Id. at 221.
[12] D.I. 7, Ex.5 F at 242.
[13] D.I. 7, Ex.6 F at 248.
[14] Id.
[15] Id.
[16] D.I. 7, Ex.9 F at 282.

left-sided far-lateral disc herniation at L4-5 with impingement of the L4 nerve root.[17]   The
MRI further showed a central disc herniation at L5-S1 without nerve impingement and a
central disc bulge at L3-4.  Surgery was recommended.[18]

In April 2006, plaintiff underwent a lumbar fusion.[19]  On May 22, 2006, Dr.
Yalamanchili noted that plaintiff was recovering following her surgery and he anticipated
further improvement over the next few months.[20]  On November 14, 2006, Dr. Witherill
reported improvement in plaintiff's radicular symptomology, with intermittent bilateral
subjective numbness across the sacral region, and some benefit from physical
therapy.[21]  Dr. Witherill further noted plaintiff had an antalgic gate, decreased range of
motion of the lumbar spine and tenderness in the left and right lower paravertebral
margins.[22]  No bilateral sacroiliac tenderness was evident.[23]  Plaintiff had lower
extremity strength of 5/5 and bilateral sensation was intact.[24]  On November 30, 2006,
Dr. Witherill performed an L5-S1 epidural injection and plaintiff was advised to return in
three weeks.[25]

On April 18, 2007, plaintiff saw Dr. Yalamanchili, who informed Dr. Badillo of his
consultation and the results of a CT scan.[26]  The scan revealed a 5mm posterior
migration of the interbody spacer, which clinically correlated with her lower back and left

---

[17] Id.
[18] Id.
[19] D.I. 7, Ex.11 F at 310.
[20] D.I. 7, Ex.13 F at 333.
[21] D.I. 7, Ex.15 F at 342.
[22] Id.
[23] Id.
[24] Id.
[25] D.I. 7, Ex.15 F at 341.
[26] D.I. 7, Ex.16 F at 360.

leg pain.[27]  He recommended surgery for exploration of the interbody fusion with possible removal of the instrumentation and refusion.  Plaintiff subsequently underwent surgery.[28]

On July 10, 2007, Dr. Yalamanchili wrote to Dr. Badillo regarding plaintiff's post-operative visit three weeks earlier.[29]  At that time, plaintiff complained of intractable left posterior thigh pain and numbness in her third through fifth left toes.[30]  Strength was decreased in her left anterior tibialis and extensor hallucis longus muscles; straight leg raising test was positive; her gait was antalgic; and deep tendon reflexes were absent in the left achilles tendon.[31]  There was evidence of postoperative granulation tissue at the left lateral recess on the L1 nerve root.[32]  There was also evidence of partial bone ossification at the left lateral masses of the L5-S1, as well as intervertebral graft incorporation.[33]

B.     Hearing Testimony

1.     Plaintiffs Testimony

At the May 27, 2014 video hearing, plaintiff testified concerning her background, work history, and her alleged disability.[34]  She is approximately five-foot-eight inches tall and weighs about 129 pounds.[35]  She has an eleventh grade education.[36]  She is

---

[27] Id.
[28] Id.
[29] D.I. 7, Ex.16 F at 356.
[30] Id.
[31] Id.
[32] Id.
[33] Id.
[34] D.I. 7, at 37.
[35] Id. at 43
[36] Id. at 48.

married and lives in a mobile home with her husband, who provides financial assistance from his retirement stipend.[37]

Plaintiff stated she was confined to a wheelchair in 2006.[38]  In 2006, she underwent surgery and later was able to ambulate with a walker.[39]  Plaintiff testified that in 2007, she could perform the duties of a resident manager of a mobile home park, the job she currently holds.[40]  As a resident manager, plaintiff does not receive a paycheck or medical benefits:  she is provided free rent and gas in exchange for her services.[41]

Plaintiff's responsibilities as a resident manager include collecting rent from other tenants, where the tenants drop off their rent, usually in cash, and plaintiff drafts a receipt.[42]  She also inspects the premises for maintenance that needs to be performed on the tenants' homes.[43]  For the first two weeks of the month, plaintiff works approximately four to five hours a day, with the assistance of her husband.[44]  For the second two weeks of the month, her work hours depend upon how she feels due to her neck and back pain.[45]  She claims that she must lay down a few times a day because of such pain.[46]

---

[37] Id. at 49.
[38] Id. at 44.
[39] Id.
[40] Id. at 45
[41] Id. at 46.
[42] Id. at 45.
[43] Id.
[44] Id. at 50.
[45] Id. at 47-50.
[46] Id. at 50.

Concerning her daily activities in 2007, plaintiff testified her ability to perform house-related work was limited.[47]  Doing laundry and cleaning was restricted due to her pain and physical limitations.[48]

Plaintiff also described her physical condition in 2007 and how it affected her ability to work.  Her neck pain is a severe burning sensation in her shoulder, which required daily rest for relief.[49]  She walks with the assistance of a walker or a cane.  She uses the cane more often for mobility and because her legs are weak and frequently give out.[50]

### 2. Vocational Expert's Testimony

The vocational expert, Linda Oggins, testified concerning plaintiff's background, skills, and limitations.  Oggins classified plaintiff's work as a residential manager of a mobile home park as skilled, light work.[51]

During the hearing, the ALJ and plaintiff's attorney posed several hypothetical situations.  All hypothetical questions included the same age, education, and work history of plaintiff.

In the first hypothetical, the individual could perform light work, was able to frequently use ramps and stairs, could frequently balance, occasionally stoop, kneel couch and crawl, with only occasional exposure to extreme cold and no exposure to unprotected heights and hazards.[52]  In response, Oggins testified such an individual

---

[47] Id. at 52.
[48] Id.
[49] Id. at 53.
[50] Id. at 55.
[51] Id. at 56.
[52] Id. at 57.

could perform the positions of a cashier and dining room attendant.[53]

The second hypothetical had the same limitations as the first and included the additional restriction of using a cane for balance.[54]  Oggins responded that plaintiff's current work comports with that hypothetical.[55]  Oggins further opined that the positions of a ticket seller and parking lot cashier are consistent with the hypothetical posed.[56]

The final hypothetical involved an individual performing sedentary work which consisted of occasionally using ramps, stairs, ladders, and rope scaffolds, with occasional balancing, stooping, kneeling, crouching and crawling, occasional pushing and pulling with lower extremities and occasional exposure to extreme cold and vibration.  Oggins responded the unskilled, sedentary positions that comport with the hypothetical are an addresser and charge account clerk.[57]

The ALJ also asked Oggins about the number of monthly absences an employer customarily tolerates from employees.[58]  Oggins noted one or two absences.[59]  ALJ also inquired about how many breaks are generally allowed per day and Oggins replied two, including a lunch break.[60]  Plaintiff's attorney then asked whether employers tolerate unscheduled breaks, to which Oggins responded no.[61]

---

[53] Id.
[54] Id.
[55] Id. at 58.
[56] Id.
[57] Id. at 59.
[58] Id.
[59] Id.
[60] Id.
[61] Id. at 60.

### 3. The ALJ's Findings

Based on the medical evidence and testimony, the ALJ determined plaintiff was not disabled and, therefore, ineligible for Social Security Disability Insurance.  The ALJ's findings are summarized as follows:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2007.

2. The claimant did not engage in substantial gainful activity during the period from August 11, 2006 through her date last insured of December 31, 2007.

3. Through the date last insured, the claimant had the following severe impairment: degenerative disk disease of the spine.

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that from August 6, 2006, through December 31, 2007, the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except:  the claimant could climb ramps and stairs frequently and perform tasks that did not require climbing of ropes ladders and scaffolds.  The claimant could bend frequently and occasionally stoop, kneel, crouch, and crawl.  The claimant retained the ability to push and pull with her bilateral lower extremities occasionally.  The claimant had the residual functional capacity to perform tasks that did not involve more than occasional exposure to extreme cold and tasks that involved no exposure to unprotected heights or hazards such as dangerous, moving machinery.

6. The claimant has no past relevant work (20 CFR 404.1565).

7. The claimant was born on February 3, 1958 and was 49 years old, which is defined as a younger individual age 18-49, on the date last insured (20. CFR 404.1563).

8. The claimant has a limited education and is able to communicate in

9

English (20 CFR 404.1564).

9.     Transferability of job skills is not an issue because claimant does not have past relevant work (20 CFR 404.1568).

10.    Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11.    The claimant was not under a disability, as defined in the Social Security Act, at any time from August 11, 2006, through December 31, 2007, the date last insured (20 CFR 404.1520(g)).

## III.    STANDARD OF REVIEW

### A.    Motion for Summary Judgment

Both parties moved for summary judgment under Federal Rule of Civil Procedure 56(c).  In determining the appropriateness of summary judgment, the court must "review the record as a whole, 'draw[ing] all reasonable inferences in favor of the non-moving party[,]' but [refraining from] weighing the evidence or making credibility determinations."[62]  If "there is no genuine issue as to any material fact" and the movant is entitled to judgment as a matter of law, summary judgment is appropriate.[63]

This standard does not change merely because there are cross-motions for summary judgment.[64]  Cross-motions for summary judgment:

---

[62] *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 1500 (2000) (citation omitted).
[63] *See Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005) (quoting Fed. R. Civ. P 56(c)).
[64] *Appelmans v. City of Philadelphia*, 826 F.2d 214, 216 (3d Cir. 1987).

are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.[65]

"The filing of cross-motions for summary judgment does not require the court to grant summary judgment for either party."[66]

### B.   Review of the ALJ's Findings

Section 405(g) sets forth the standard of review of an ALJ's decision.  The court may reverse the Commissioner's final determination only if the ALJ did not apply the proper legal standards, or the record did not contain substantial evidence to support the decision.  Factual findings are upheld if supported by substantial evidence.[67]  Substantial evidence means less than a preponderance, but more than a mere scintilla of evidence.[68]  As the United States Supreme Court has found, substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[69]

In determining whether substantial evidence supports the Commissioner's findings, the court may not undertake a *de novo* review of the decision nor re-weigh the evidence of record.[70]  The court's review is limited to the evidence that was actually

---

[65] *Rains v. Cascade Indus., Inc.* 402 F.3d 241, 245 (3d Cir. 1968).
[66] *Krupa v. New Castle Cnty.*, 732 F. Supp. 497, 505 (D. Del. 1990).
[67] *See* 42 U.S.C. §§405(g), 1383(c)(3); *see also Monsour Med. Ctr. v. Heckle*, 806 F.2d 1185, 1190 (3d Cir. 1986).
[68] *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).
[69] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).
[70] *Monsour Med. Ctr.*, 806 F.2d at 1190.

presented to the ALJ.[71]  The Third Circuit has explained that a:

> single piece of evidence will not satisfy the substantiality test if the
> [Commissioner] ignores, or fails to resolve, a conflict created by
> countervailing evidence.  Nor is evidence substantial if it is overwhelmed by
> other evidence, particularly certain types of evidence (e.g., evidence offered
> by treating physicians) or if it really constitutes not evidence but mere
> conclusion.[72]

Thus, the inquiry is not whether the court would have made the same determination, but rather, whether the Commissioner's conclusion was reasonable.[73] Even if the court would have decided the case differently, it must defer to and affirm the ALJ so long as the decision is supported by substantial evidence.[74]

Where "review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision."[75]  In *SEC v. Chenery Corp.*, the Court found that a "reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency."[76]  "If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis."[77]  The Third Circuit has recognized the applicability of this finding in the Social Security disability context.[78]  This court's

---

[71] *Matthews v. Apfel*, 239 F.3d 589, 593-95 (3d Cir. 2001).
[72] *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).
[73] *Brown v. Bowen*, 845 F.2d 1156, 1159 (3d Cir. 1988).
[74] *Monsour Med. Ctr.*, 806 F.2d at 1190-91.
[75] *Hansford v. Astrue*, 805 F. Supp. 2d 140, 144-45 (W.D. Pa. 2011).
[76] 332 U.S. 194, 196 (1947).
[77] *Id.*
[78] *Fargnoli v. Massanaria*, 247 F.3d 34, 44 n. 7(3d Cir. 2001).

review is limited to the four corners of the ALJ's decision.[79]  In Social Security cases, the substantial evidence standard applies to motions for summary judgment brought pursuant to Fed. R. Civ. P. 56.[80]

## IV.   DISCUSSION

### A.   Parties Contentions

In her appeal, plaintiff maintains the ALJ's residual functional capacity assessment is not supported by substantial evidence.  Plaintiff further argues the ALJ erred in failing to consider evidence prior to August 10, 2006.  The Commissioner counters that substantial evidence supports the ALJ's assessment of plaintiff's RFC.

### B.   Disability Analysis

Title II of the Act, 42 U.S.C. § 423(a)(I)(D), "provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability."[81]  To qualify for DIB, a claimant must establish disability prior to the date she was last insured.[82]  A "disability" is defined as the inability to do any substantial gainful activity because of any medically determinable physical or mental impairment, which either could result in death or has lasted or can be expected to last for a continuous period of at least 12 months.[83]  To be disabled, the severity of the impairment must prevent return to previous work, and based on age, education, and work experience, restrict "any other kind of substantial gainful work which exists in the

---

[79] *Cefalu v. Barnhart*, 387 F. Supp. 2d 486, 491 (W.D. Pa. 2005).
[80] *See Woody v. Sec'y of the Dep't of Health & Human Servs.*, 859 F.2d 1156, 1159 (3d Cir. 1988).
[81] *Bowen*, 482 U.S. at 140.
[82] 20 C.F.R. §404.131.
[83] 42 U.S.C. §§423(d)(1)(A), 1382(c)(a)(3).

national economy."[84]

In determining whether a person is disabled, the Commissioner is required to perform a five-step sequential analysis.[85]  If a finding of disability or non-disability can be made at any point in the sequential process, the review ends.[86]

At the first step, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity, and if so, a finding of non-disabled is required.[87]  If the claimant is not so engaged, step two requires the Commissioner to determine whether the claimant is suffering from an impairment or a combination of impairments that is severe.  If no severe impairment or a combination thereof exists, a finding of non-disabled is required.[88]

If the claimant's impairments are severe, the Commissioner, at step three, compares them to a list of impairments ("the listings") that are presumed severe enough to preclude any gainful work.[89]  When a claimant's impairment or its equivalent matches an impairment in the listing, the claimant is presumed disabled.[90]  If a claimant's impairment, either singularly or in combination, fails to meet or medically equal any listing, the analysis continues to steps four and five.[91]

---

[84] 42 U.S.C. §423(d)(2)(A); *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003).
[85] 20 C.F.R. §404.1520; *see also Plummer v. Apfel*, 186 F.3d 422, 427-28 (3d Cir. 1999).
[86] 20 C.F.R. §404.1520(a)(4).
[87] 20 C.F.R. §404.1520(a)(4)(i).
[88] 20 C.F.R. §404.1520(a)(4)(ii)
[89] 20 C.F.R.§404.1520(a)(4)(iii); *Plummer*, 186 F.3d at 428.
[90] 20 C.F.R.§404.1520(a)(4)(iii).
[91] 20 C.F.R.§404.1520(e).

At step four, the Commissioner determines whether the claimant retains the RFC to perform her past relevant work.[92]  A claimant's RFC is "that which an individual is still able to do despite limitations caused by [her] impairment(s)."[93]  "The claimant bears the burden of demonstrating an inability to return to [her] past relevant work."[94]

If the claimant is unable to return to her past relevant work, step five requires the Commissioner to determine whether the claimant's impairments preclude adjusting to any other available work.[95]  At this final step, the burden is on the Commissioner to show the claimant is capable of performing other available work existing in significant national numbers and consistent with the claimant's medical impairments, age, education, past work experience, and RFC before denying disability benefits.[96]  In making this determination, the ALJ must analyze the cumulative effect of all the claimant's impairments and often seeks the assistance of a vocational expert.[97]

### 1.     Weight Accorded to Opinion Evidence

#### a.     Dr. Borek

The ALJ assigned little weight to the opinions of Dr. Borek due to the inconsistency of plaintiff's physical abilities from a medical examination performed on August 29, 2006 and the evidence presented at the hearing level.  Dr. Borek's examination resulted in a determination of an RFC of "less than sedentary."[98]  The

---

[92] 20 C.F.R.§404.1520(a)(4)(iv); *Plummer*, 186 F.3d at 428.
[93] *Fargnoli*, 247 F.3d at 40.
[94] *Plummer*, 186 F.3d at 428.
[95] 20 C.F.R.§404.1520(g); *Plummer*, 186 F.3d at 428.
[96] *Plummer*, 186 F.3d at 427-28.
[97] *Id.*
[98] D.I. 7, Ex. 14 F at 339.

15

October 2007 medical evaluation revealed plaintiff was able to walk with a steady gait and tiptoe which evidenced improvement when compared to the August 29, 2006 evaluation.[99]  Also, the ALJ considered plaintiff's lack of treatment from 2008 until 2010 to substantiate his evaluation of plaintiff's progress from the June 2007 surgery.[100]  Therefore, the ALJ reasonably concluded Dr. Borek's evaluation from August 29, 2006 should be given little weight.

### b.      DDS Medical Consultant of October 2012

The ALJ assigned "significant weight" to the DDS Medical Consultant findings in October 2012 since they were consistent with the documented improvements to the plaintiff's condition from October 2007.[101]  The medical findings from the 2012 DDS consultant were the result of a DIB claim at the reconsideration level.[102]  The consultant determined plaintiff had a discogenic and degenerative back disorder and bladder cancer, and RFC of not disabled.[103]  The medical findings from October 2007, which the ALJ referenced, were plaintiff's steady gait, improving left leg pain, and resolution of numbness in her toes.[104]

### c.      Dr. Badillo

The ALJ assigned "slight weight" to Dr. Badillo's finding in August 2012 that plaintiff was unable to work.[105]  Dr. Badillo's assessment was made five years after

---

[99] D.I. 7, Ex.16 F at 355.
[100] D.I. 7, at 24.
[101] *Id.* at 25.
[102] *Id.*
[103] *Id.*
[104] *Id.*
[105] *Id.* at 25.

plaintiff was last insured and following a 2011 car accident which potentially contributed to her condition in 2012.[106]   Therefore, and plaintiff concedes, that since the assessment was outside the relevant time frame, the ALJ reasonably assigned slight weight to the opinion of Dr. Badillo.

### 2.   RFC Assessment

Plaintiff alleges the ALJ's residual functional capacity (RFC) is not supported by substantial evidence.  An RFC assesses an individual's ability to perform in a work setting despite impairments and limitations.[107]   In making this finding, the ALJ must consider all of the claimant's impairments, including those that are not severe.  Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence.[108]

In the instant matter, the ALJ determined plaintiff had the residual functional capacity to perform light work.  The SSA defines work as "light" when it

> involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range or light work, you must have the ability to do substantially all of these activities.[109]

The SSA has further explained that "light work generally requires the ability to stand and carry weight for approximately six hours of an eight hour day."[110]

---

[106] *Id.*
[107] 20 C.F.R. § 404.1545.
[108] *See Plummer*, 186 F.3d at 429.
[109] 20 C.F.R. § 404.1567(b).
[110] *Jesurum v. Sec. of Health & Human Servs.*, 48 F.3d 114, 119 (3d Cir.1995) (citing Social Security Ruling 83–10).

In determining plaintiff's RFC, the ALJ considered all of her limitations and disabilities and thereby, based his conclusions upon substantial evidence.  The ALJ noted plaintiff's medical history in detail, including a spinal fusion surgery of the L5-S1 in April 2006.[111]  Plaintiff testified that after the surgery, her ability to walk improved and she was able to do the same work in 2007 (the year she is claiming disability) that she performed in 2008.[112]  The ALJ considered these daily activities in assessing plaintiff's RFC, which the ALJ noted as inconsistent with her testimony of "disabling limitations."

Furthermore, the ALJ based his determination upon substantial evidence provided by the physical examination of plaintiff that occurred on October 29, 2007.  In June 2007, plaintiff underwent redo fusion with partial removal of instrumentation.[113]  On October 29, 2007, plaintiff reported feeling better after this surgery.[114]  The ALJ addressed the doctor's findings at this time, which were some residual lower back pain and lumbar tenderness, resolving numbness in toes, limited strength, an improved, steady gait, and an ability to walk on tip toes and heels.[115]  The ALJ further noted plaintiff's refusal for physical therapy and an absence of any record of treatment from 2007 until 2010.[116]  Therefore, the ALJ based his assessment upon substantial evidence presented in the record.

### 3.    Res Judicata

---

[111] *Id.* at 23.
[112] *Id.*
[113] *Id.* at 24.
[114] *Id.*
[115] *Id.*
[116] *Id.*

Plaintiff argues that the ALJ committed legal error when applying the doctrine of res judicata by not considering evidence of disability between February 2, 2006 to August 10, 2006.  Plaintiff notes that the Social Security Act prescribes two ways for a claimant to meet the one year duration requirement:  (1) demonstrate that the impairment is expected to last twelve continuous months; or (2) prove that the impairment actually lasted twelve continuous months.  Plaintiff contends, because the time period between February 2, 2006 and August 10, 2006 is less than twelve months, the prior denial of the claim filed on March 7, 2006 was based on the ALJ's conclusion that the impairment was not expected to last twelve months.  Plaintiff emphasizes, however, that her impairments, in fact, lasted beyond the twelve month requirement, and thus, res judicata does not apply.

Because the ALJ based his decision upon the alleged onset date of February 5, 2005, not February 2006, plaintiff's argument in this regard fails.  Applying the February 2005 date clearly fills the one year duration requirement for establishing disability, thus negating her position that the prior dismissal was based upon her impairment as not expected to meet the twelve month duration.

Plaintiff also claims the ALJ misapplied the doctrine of res judicata by not considering the evidence from the alleged onset date.  The doctrine of res judicata precludes one from pursuing a claim once that claim has been resolved in a prior proceeding, if the claim is based upon the same merits, parties, and material facts.[117] Here, res judicata bars the plaintiff from making a claim from February 2, 2005 through

---

[117] *See Purter v. Heckler*, 771 F.2d 682, 690 (3d Cir. 1985).

August 10, 2006.  The issue, however, is whether res judicata also bars consideration of evidence during that time frame.

The code of federal regulations states, "[w]e will assess your residual functional capacity based on all of the relevant medical and other evidence."[118]  In absence of the presentation of any case law or other authority suggesting that res judicata also precludes consideration of *evidence*, and not just claims, the matter should be remanded for consideration of all relevant medical evidence beginning February 2, 2005 for the claim involving the period of August 11, 2006 through December 31, 2007.  In so finding, this court is not suggesting that the denial of the application filed on March 7, 2006 is reversed.  As noted by the ALJ, that denial of a claim for disability is administratively final and binding through August 10, 2006, under the operation of res judicata.[119]  However, that does not necessarily bar consideration of evidence in the record to determine whether such evidence along with the record from August 11, 2006 through December 31, 2007 demonstrates a disability within this later time frame.

It is recommended that the current claim of disability for the time period between August 11, 2006 through December 31, 2007 be remanded for further consideration by the ALJ.  In deciding whether plaintiff was disabled during this time period, the ALJ is to consider all relevant medical evidence contained in the record beginning on February 2, 2005 through December 31, 2007.

---

[118] 20 C.F.R. § 404.1545

[119] Plaintiff did not request any further review of the prior unfavorable decision before expiration of the prescribed time period for requesting review.  *See* D.I. 7-2 at 19.**V.**

**CONCLUSION**

For the foregoing reasons, I recommend that:

(1) Plaintiff's motion for summary judgment (DI 11) be granted in part and denied in part; and

(2) Defendant's motion for summary judgment (DI 17) be granted in part and denied in part.

(3) As noted herein, the current claim of disability for the time period between August 11, 2006 through December 31, 2007 be remanded for further consideration by the ALJ.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), FED. R. CIV. P. 72(b)(1), and D. DEL. LR 72.1.  The parties may serve and file specific written objections within ten (10) days after being served with a copy of this Report and Recommendation.

The parties are directed to the Court's Standing Order in Non-Pro Se matters for Objections Filed under FED. R. CIV. P. 72, dated October 9, 2013, a copy of which is available on the Court's website, www.ded.uscourts.gov.

Date:  January 4, 2017                               /s/ Mary Pat Thynge
                                                     Chief U. S. Magistrate Judge